JUDGE RAKOFF

**'08 CIV 6396**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TPG REWARDS, INC.,

                           Plaintiff,           :       Civil Action No.

         v.

QUANTUM LOYALTY SYSTEMS, INC.,

                                            :       **JURY TRIAL DEMANDED**

                          Defendant.

*(Received stamp: JUL 17 2008 — U.S.D.C. S.D. N.Y. CASHIERS)*

---

## COMPLAINT

Plaintiff TPG Rewards Inc. for its Complaint against Defendant Quantum Loyalty Systems, Inc. hereby alleges as follows:

## THE PARTIES

1.     Plaintiff TPG Rewards, Inc. ("TPG") is a Delaware corporation having a place of business at 111 John Street, 27th Floor, New York, New York 10038 ("TPG").

2.     On information and belief, defendant Quantum Loyalty Systems, Inc. ("Quantum") is a Nevada corporation having a place of business at 926 Incline Way, Suite 200, Incline Village, Nevada 89451. On information and belief, Quantum does business throughout the United States, and within this Judicial District.

## NATURE OF CLAIMS AND BASIS FOR JURISDICTION AND VENUE

3.     This is an action for false advertising and unfair competition based upon a false

comparative advertisement distributed by defendant.

4.      This action arises under the Lanham Act, 15 U.S.C. § 1125(a), and the statutes and laws of the State of New York.  This court has jurisdiction over the federal claims in this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

5.      Jurisdiction over the state claims is based upon 15 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

6.      Venue is proper within this Judicial District under 28 U.S.C. §§ 1391(b) and (c).

## ALLEGATIONS COMMON TO ALL CLAIMS

7.      TPG has been in the business of creating a variety of incentive rewards programs for its customers since at least 2006.  One such program is the MOVIE CASH® program, which is an incentive rewards program created by TPG's predecessor in or about 1994.  The MOVIE CASH® program rewards purchasers of certain products with free or discounted movie tickets redeemable at movie theatres throughout the United States.  The MOVIE CASH® program is intended to boost product sales by attracting consumers with the offer of a free or discounted movie ticket in connection with the purchase of a particular product.

8.      The MOVIE CASH® program provides for a variety of means for delivering the movie ticket to the consumer.  The movie ticket may be a traditional paper ticket which may be mailed to the consumer or packaged with the product being sold to the consumer.  An example of such a ticket is reproduced below:



The printed movie ticket is also referred to as a check-based product, because the movie theatre owner deposits the printed movie ticket into its bank account, and it is paid as other checks are paid.

9.      Another method of delivery used by the MOVIE CASH® program is by providing an actual prepaid debit card to the purchaser of the product, which is either mailed to the consumer or packaged with the product being sold to the consumer.  An example of such a ticket is reproduced below:



The consumer presents the debit card to the movie theatre for redemption, the same as it would any debit card.

10.      A third method of delivery used by the MOVIE CASH® program is by providing the

purchaser of the product with a redemption code, which is either mailed to the consumer or packaged with the product being sold to the consumer.  The consumer may use the redemption code to obtain a movie ticket electronically, which then may be printed at home.  The movie ticket contains a 16-digit debit code (the same as found on traditional debit cards) which the consumer presents to the movie theatre for redemption, similar to the prepaid debit card described above.  An example of such a ticket is reproduced below:



Programs where the movie ticket debit codes are delivered electronically are often referred to as e-MOVIE CASH[TM] programs.

11.     TPG customizes each reward program based upon the customer's individual needs. A customer may desire to use a combination of delivery methods for the movie tickets issued by the MOVIE CASH[®] program.  For example, a customer may elect to set up an e-MOVIE CASH[TM] program, where the redemption codes may be redeemed either to receive a debit code electronically as described in the preceding paragraph, or to receive a traditional paper ticket (check-based product) by mail, as described in paragraph 8 above.  Such an e-MOVIE CASH[TM] program would provide a consumer with a movie ticket which may be used at virtually any movie theatre in the

4

United States.

12.    On information and belief, there were approximately 38,794 movie theatre screens in the entire United States as of 2007.  Virtually every movie theatre throughout the United States participates in the MOVIE CASH® program in some manner.  TPG maintains a variety of databases of participating movie theatres.  TPG may customize databases for each MOVIE CASH® program according to the customer's particular needs.  For example, a customer may desire to direct consumers only to movie theatres which serve certain beverages, for example, Coca Cola.

13.    Consumers who receive a movie ticket through any of the various MOVIE CASH® programs are informed of which website to visit to locate movie theatres which participate in that particular MOVIE CASH® program.  These websites are referred to as movie theatre locators.  An example of such a locator is www.emoviecash.com/locator.  The locators may be customized according to a customer's needs to include as few or as many theatres as desired.

14.    At least as early as February 28, 1994, TPG's predecessor adopted and first used the service mark MOVIE CASH in connection with promoting the goods and services of others through the administration of consumer incentive awards programs, featuring redeemable certificates, in interstate commerce.

15.    Continuously since at least February 28, 1994, TPG and its predecessor have marketed, sold and offered for sale in interstate commerce its incentive awards services under its service mark MOVIE CASH.

16.    TPG and its predecessor have spent a considerable amount of money in establishing the service mark MOVIE CASH in the minds of consumers as a source of quality incentive awards services.

17.    As a result of TPG's extensive promotional, marketing and sales efforts during this period, the reputation of the service mark MOVIE CASH continuously has grown among the general public and the mark now is well and favorably known throughout the United States as a source of origin for incentive awards services.  TPG's services, sold under the service mark MOVIE CASH®, have enjoyed an outstanding nationwide reputation for high quality.

18.    The MOVIE CASH® program is an extremely successful marketing program for TPG and has been in high demand since it was first introduced.  Indeed, TPG's billings now exceed $20 million annually.

19.    The MOVIE CASH® program is directed to customers and reaches consumers throughout the United States and within this Judicial District.  TPG also maintains a website at www.tpgrewards.com.

20.    The service mark MOVIE CASH is distinctive and famous as applied to incentive awards services.

21.    TPG's service mark MOVIE CASH has been registered for promoting the goods and services of others through the administration of consumer incentive awards programs, featuring redeemable certificates, upon the Principal Register of the United States Patent and Trademark Office as Registration No. 2,631,349, which issued October 8, 2002.  TPG is the owner by assignment of this registration.  A copy of this registration is attached hereto as Exhibit A.  The registration is valid, subsisting and incontestable.

22.    On information and belief, defendant Quantum advertises, promotes, distributes, offers for sale, and sells incentive awards program services, in interstate commerce throughout the United States and the State of New York.

6

23.     On information and belief, Quantum offers an incentive awards program under the name "Hollywood Movie Money," which provides movie theatre tickets to consumers who purchase certain products from Quantum's customers.  On information and belief, the "Hollywood Movie Money" program includes both paper movie tickets, delivered by mail or packaged with the product being sold, and electronic movie tickets, which are obtained electronically through activation codes entered on a Quantum website.

24.     Quantum is a direct competitor of TPG in the market for incentive awards program services.

25.     On information and belief, Quantum recently began distributing in interstate commerce a false side-by-side comparative advertisement which purports to compare Quantum's "Hollywood Movie Money" program with TPG's e-MOVIE CASH$^{TM}$ program.  Quantum has distributed its false comparative claims without the authorization or consent of TPG.  A copy of Quantum's false comparative advertisement is attached as Exhibit B.

26.     Quantum's false comparative advertisement falsely compares Quantum's  entire "Hollywood Movie Money" program with a subset of TPG's MOVIE CASH® program.

27.     Quantum's false comparative advertisement falsely labels Quantum as the "Superior Theater Network."

28.     Quantum's false comparative advertisement also falsely states that TPG's e-MOVIE CASH$^{TM}$ program includes "200 Participating Movie Theater Companies," "17,981 Screens" and "49% Coverage."  Each of these numbers is materially incorrect.

29.     Additionally, on information and belief, Quantum's false comparative advertisement falsely states that Quantum's "Hollywood Movie Money" program includes "600 Participating

Movie Theater Companies," "36,049 Screens" and "98.5% Coverage."   On information and belief, each of these numbers is materially incorrect.

30.     Finally, Quantum's false comparative advertisement includes depictions of two maps, one which purports to show the theatre coverage available to customers of the "Hollywood Movie Money" program, and another which purports to show the theatre coverage available to customers of TPG's e-MOVIE CASH$^{TM}$ program.  The representations on the two maps are false and misleading on their face.

31.     On information and belief, Quantum distributed its false comparative advertisement without any substantiation of the comparative claims contained therein.

32.     On information and belief, TPG's incentive awards program services and Quantum's incentive awards program services are competitive services sold in the same channels of trade to similar customers.

33.     On information and belief, the claims made by Quantum in its false comparative advertisement are expressly and impliedly false because the theatre coverage available to customers of TPG's e-MOVIE CASH$^{TM}$ program is far greater than represented in the false comparative advertisement.

34.     On information and belief, the claims made by Quantum in its false comparative advertisement are expressly and impliedly false because the services being compared are not comparable.

35.     On information and belief, the claims made by Quantum in its false comparative advertisement are expressly and impliedly false because the theatre coverage available to customers of Quantum's "Hollywood Movie Money" program is far less than represented in the false

8

comparative advertisement.

36.     Further, on information and belief, the claims made by Quantum in its false comparative advertisement are expressly and impliedly false because even if Quantum's theater coverage were "36,049 Screens," as falsely stated by Quantum, such number is not 98.5% of the available screen coverage in the United States.

37.     On information and belief, customers will decide to purchase Quantum's "Hollywood Movie Money" program because of the false and misleading statements Quantum is making in its false comparative advertisement.

38.     On information and belief, as a result of Quantum's false and misleading claims in its advertising, customers interested in a movie ticket incentive awards program have been diverted from TPG to Quantum.  TPG has suffered and will continue to suffer from loss of customers.  These injuries are irreparable.

39.     Quantum's willful and intentional false and misleading claims have damaged TPG.

40.     Quantum's infringement will continue unless enjoined by this Court.

41.     TPG informed Quantum that Quantum's advertising claims are false, but Quantum has refused to withdraw its false comparative advertisement, and continues its acts willfully.

## FIRST COUNT

### False Comparative Advertising Under Section 43(a) of the Lanham Act

42.     TPG repeats the allegations set forth in paragraphs 1-41 above as if fully set forth herein.

43.     This cause of action for false advertising arises under §43(a) of the Lanham Act, 15

U.S.C. § 1125(a).

44.    The representations made by Quantum in its advertising in interstate commerce, as set forth above, falsely and misleadingly describe the nature, characteristics, effectiveness, and other qualities of TPG's incentive awards promotional program.

45.    Quantum has expressly or impliedly stated in its advertising that 200 movie theatre companies participate in the e-MOVIE CASH$^{TM}$ program, and that the e-MOVIE CASH$^{TM}$ program has 17,981 screens and 40% coverage.  These statements are material, false and will induce customers to purchase Quantum's services instead of TPG's.

46.    Quantum's false comparative advertisement includes depictions of two maps which expressly mischaracterize and falsely compare the coverage of the "Hollywood Movie Money" program, and the coverage available to customers of TPG's e-MOVIE CASH$^{TM}$ program. These statements are material, false and will induce customers to purchase Quantum's services instead of TPG's.

47.    Quantum has expressly or impliedly stated in its advertising that its "Hollywood Movie Money" program is comparable to TPG's e-MOVIE CASH$^{TM}$ program when it is not.  These statements are material, false and will induce customers to purchase Quantum's services instead of TPG's.

48.    Quantum's false advertising has a tendency to deceive a substantial segment of its intended audience into mistakenly believing that Quantum's "Hollywood Movie Money" program possesses qualities which it lacks.  On information and belief, customers have been and will continue to be induced thereby to purchase Quantum's "Hollywood Movie Money" program.

49.    As a result of defendant's false and misleading promotion and advertising, TPG has

been and is likely to continue to be injured by diversion of customers from TPG to Quantum and by the lessening of the goodwill TPG's services enjoy with the buying public. TPG has no adequate remedy at law.

## SECOND COUNT

### False Advertising Under Section 43(a) of the Lanham Act

50.    TPG repeats the allegations set forth in paragraphs 1-49 above as if fully set forth herein.

51.    This cause of action for false advertising arises under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52.    The representations made by defendant in its advertising in interstate commerce, as set forth above, falsely and misleadingly describe the nature, characteristics, effectiveness, and other qualities of Quantum's "Hollywood Movie Money" program.

53.    Quantum has expressly or impliedly stated in its advertising that 600 movie theatre companies participate in the "Hollywood Movie Money" program, and that the "Hollywood Movie Money" program has 36,049 screens and 98.5% coverage. On information and belief, these statements are material, false and will induce customers to purchase Quantum's services.

54.    Defendant's false advertising has a tendency to deceive a substantial segment of its intended audience into mistakenly believing that Quantum's "Hollywood Movie Money" program possesses qualities which it lacks. On information and belief, customers have been and will continue to be induced thereby to purchase Quantum's services.

55.    As a result of Quantum's false and misleading promotion and advertising, TPG has

been and is likely to continue to be injured by diversion of customers from TPG to Quantum and by the lessening of the goodwill TPG's services enjoy with the buying public. TPG has no adequate remedy at law.

### THIRD COUNT

#### False Advertising Under New York General Business Law

56.     TPG repeats the allegations set forth in paragraphs 1-55 above as if fully set forth herein.

57.     This cause of action is for false advertising and arises under the statutory law of the State of New York (Section 350 of New York General Business Law).

58.     The representations made by defendant in its advertising in the State of New York, as set forth above, are false and misleading in a material respect, and will induce customers to purchase Quantum's services.

59.     On information and belief, customers have relied on the false and misleading representations made in Quantum's advertising to purchase Quantum's services.60.         TPG has been, is being and will continue to be, irreparably damaged by such acts and damage will continue unless the acts are enjoined by this Court. TPG has no adequate remedy at law.

### FOURTH COUNT

#### Deceptive Practices Under New York General Business Law

61.     TPG repeats the allegations set forth in paragraphs 1-59 above as if fully set forth herein.

62.     This cause of action is for deceptive practices and arises under the statutory law of the

12

State of New York (Section 349 of New York General Business Law).

63.     The representations made by defendant in its advertising in the State of New York, as set forth above, are deceptive in a material respect, and will induce customers to purchase Quantum's services.

64.     TPG has been, is being and will continue to be, irreparably damaged by such acts and damage will continue unless the acts are enjoined by this Court.  TPG has no adequate remedy at law.

## FIFTH COUNT

### New York Common Law Unfair Competition

65.     TPG repeats the allegations set forth in paragraphs 1-64 above as if fully set forth herein.

66.     This cause of action is for unfair competition and arises under the common law of the State of New York.

67.     On information and belief, Quantum has created a likelihood of injury to TPG's business reputation by promoting and offering for sale Quantum's services with false advertising claims.

68.     On information and belief, Quantum's conduct is specifically designed to capitalize on the initiative and goodwill of TPG.

69.     TPG has been, is being and will continue to be irreparably damaged by such acts and damage will continue unless the acts are enjoined by this Court.  TPG has no adequate remedy at law.

**WHEREFORE**, plaintiff TPG Rewards, Inc. demands judgment:

(a)    Preliminarily and permanently enjoining Quantum, its agents, servants, employees and attorneys and all those acting in concert or participation therewith who receive notice of such injunction:

1.    From using any advertising, promotional material, packaging or the like which contains an express or implied claim that defendant's "Hollywood Movie Money" program has more coverage than any of TPG's MOVIE CASH$^®$ programs, including without limitation TPG's e-MOVIE CASH$^{TM}$ program;

2.    From copying, distributing or disseminating the information contained in the false comparative advertisement attached as Exhibit B to the Complaint, or any other advertisement or marketing or promotional material containing similar claims;

3.    From using any advertising, promotional material, packaging or the like which falsely compares defendant's "Hollywood Movie Money" program to any of TPG's MOVIE CASH$^®$ programs, including without limitation TPG's e-MOVIE CASH$^{TM}$ program;

4.    From using any advertising, promotional material, packaging or the like which misrepresents the coverage of defendant's "Hollywood Movie Money" program or any of TPG's MOVIE CASH$^®$ programs, including without limitation TPG's e-MOVIE CASH$^{TM}$ program;

5.    From using any advertising, promotional material, packaging or the like

which states the number of movie theatres, movie theatre companies, or movie theatre screens which participate in any of TPG's MOVIE CASH® programs, including without limitation the e-MOVIE CASH™ program;

6.     From soliciting, accepting or creating any incentive awards program for a customer which defendant has solicited with the false advertising enjoined herein or any other advertising containing similar false comparative claims; and

7.     From distributing any advertising, marketing or promotional material comparing any of Quantum's incentive awards programs to any incentive awards programs of TPG for a period of six months to allow the effects of defendant's false advertising to dissipate;

(b)     Requiring defendant to issue corrective advertising informing all customers to whom it distributed its false comparative advertising that its prior statements were false and that any customers who purchased an incentive awards program from Quantum as a result of such solicitation may cancel such programs and receive a full refund of any movies paid to Quantum;

(c)     Requiring that all copies of Quantum advertisements containing false and misleading claims, be delivered up to TPG for destruction, pursuant to 15 U.S.C. § 1118;

(d)     Requiring defendant to pay its profits to TPG, any damages sustained by TPG as a result of defendant's acts, and TPG's costs of this action, pursuant to 15 U.S.C. § 1117(a) and/or New York General Business Law §§ 349 and 350;

(e)     Requiring defendant to pay TPG three times the amount of TPG's actual damages due to the circumstances of this case, pursuant to 15 U.S.C. § 1117(a)and/or New York General Business

Law §§ 349 and 350;

(f)     Awarding TPG its reasonable attorneys' fees because of the exceptional nature of this

case, pursuant to 15 U.S.C. § 1117(a)and/or New York General Business Law §§ 349 and 350;

(g)     Awarding punitive damages to TPG in accordance with New York law; and,

(h)     Granting such other and further relief as this Court deems just and proper.

TPG REWARDS, INC.

Dated: July 16, 2008

By: Robert T. Maldonado

Robert T. Maldonado (RM 7873)
Norman H. Zivin (NZ 6053)
Tonia A. Sayour (TS 7208)
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, New York, 10036
(212) 278-0400
Fax. (212) 391-0525
E-mail: RMaldonado@cooperdunham.com

Attorneys for Plaintiff
TPG Rewards, Inc.

16

# Exhibit A

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

Reg. No. 2,631,349

## United States Patent and Trademark Office

Registered Oct. 8, 2002

### SERVICE MARK
#### PRINCIPAL REGISTER

## MOVIE CASH

INTERPUBLIC GROUP OF COMPANIES, INC., THE (DELAWARE CORPORATION)
1271 AVENUE OF THE AMERICAS
44TH FLOOR
NEW YORK, NY 10020

    FOR: PROMOTING THE GOODS AND SERVICES OF OTHERS THROUGH THE ADMINISTRATION OF CONSUMER INCENTIVE AWARDS PROGRAMS FEATURING REDEEMABLE CERTIFICATES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

    FIRST USE 2-28-1994; IN COMMERCE 2-28-1994.

    NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MOVIE", APART FROM THE MARK AS SHOWN.

    SER. NO. 76-334,342, FILED 11-6-2001.

RONALD MCMORROW, EXAMINING ATTORNEY

# Exhibit B

# Superior Theater Network





200 Participating Movie Theater Companies
17,981 Screens 49% Coverage

600 Participating Movie Theater Companies
36,049 Screens 98.5% Coverage



QuantumLoyalty.com

North America ★ South America
Europe ★ Australia