UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|                          |   |                        |
|:-------------------------|:--|:-----------------------|
| TPG REWARDS, INC.,       | : |                        |
|                          | : |                        |
| Plaintiff,               | : | Civil Action No.       |
|                          | : | 1:08-CV-06396 (JSR)    |
| v.                       | : |                        |
|                          | : |                        |
| QUANTUM LOYALTY SYSTEMS, INC., | : |                  |
|                          | : |                        |
|                          | : |                        |
| Defendant.               | : |                        |

_____:

## PLAINTIFF TPG REWARD INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION,
## <u>PURSUANT TO RULE 65(a), FED. R. CIV. P.</u>

Robert T. Maldonado (RTM 7873)
Norman H. Zivin (NZ 6053)
Tonia A. Sayour (TS 7208)
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, New York  10036
Tel. (212) 278-0400
Fax. (212) 391-0525

ATTORNEYS FOR PLAINTIFF
TPG REWARDS, INC.

## TABLE OF CONTENTS

Page:

TABLE OF AUTHORITIES…………………………………………………………ii

I.      INTRODUCTION………………………………………………………1

II.     FACTUAL BACKGROUND………………………………………………...3

III.    ARGUMENT……………………………………………………………6

    A.      The Applicable Principles of Law………………………………………6

    B.      TPG Is Likely To Prevail On Its False Advertising Claim……………...7

    C.      TPG Also Is Likely To Prevail On Its Claims Under
        New York G.B.L. §§ 349 and 350……………………………………….13

    D.      TPG Is Likely To Prevail On Its Claim of
        New York Unfair Competition……...........................................................14

    E.      Plaintiff Will Be Irreparably Injured If Defendant's
        False Comparative Advertising Is Not Enjoined………………………15

    F.      The Balance of Hardships Tips Decidedly In TPG's Favor……………16

    G.      The Public Interest Weighs In TPG's Favor…………………………...17

    H.      The Scope of the Injunction……………………………………………17

IV.     CONCLUSION………………………………………………………...19

i

## TABLE OF AUTHORITIES

Cases:                                                                    Page:


*American Brands, Inc. v. R.J. Reynolds Tobacco Co.*,
 413 F. Supp. 1352, 1356 (S.D.N.Y. 1976)……………………………….....8

*American Home Products Corp. v. Johnson & Johnson*,
 654 F. Supp. 568, 590 (S.D.N.Y. 1987)……………………………….....8

*Cartier Inc. v. Deziner Wholesale L.L.C.*,
 55 U.S.P.Q.2d 1131,1134-1135 (S.D.N.Y.2000)………………………..……9

*Castrol, Inc. v. Quaker State Corporation*,
 977 F.2d 57, 62, 63, 66 (2d Cir. 1992)…………………………………6,11,18

*Coca-Cola Company v. Tropicana Products, Inc.*,
 690 F. 2d 312, 317 (2d Cir. 1982)………………………………….....6,8,15

*Fisher-Price, Inc. v. Well-Made Toy Manufacturing Corp.*,
 25 F.3d 119, 122 (2d Cir. 1994)…………………………………………..6

*Geisel v. Poynter Products, Inc.*,
 283 F. Supp. 261, 267-268 (S.D.N.Y. 1968)……….…………...............8

*Gristede's Foods, Inc. v. Unkechauge Nation*,
 532 F.Supp.2d 439, 450 (S.D.N.Y.2007) …………………………….......13

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
 596 F.2d 70, 72 (2d Cir. 1979)(per curiam)………………….................6

*Johnson & Johnson v. Procter & Gamble*,
 285 F. Supp. 2d 389, 285, 393-394 (S.D.N.Y. 2003),
 *aff'd*, 90 Fed. Appx. 8 (2d Cir. 2003)………………………………..6,16,17

*Matsushita Electric Corp. of America v. Solar Sound Sys., Inc.*,
 381 F. Supp. 64, 70 (S.D.N.Y. 1974)…………………………………......18

*McNeilab, Inc. v. America Home Products Corp.*,
 848 F.2d 34, 38 (2d Cir. 1988)…………………………………………....6

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*,
 938 F.2d 1544, 1549 (2d Cir. 1991)………………………………….....8

*Media Arts International Ltd. v. Trillium Health Products,*
  25 U.S.P.Q.2d 1764, 1769 (E.D. Pa. 1992)…………………………………10

*Nester's Map & Guide Corp. v. Hagstrom Map Co.,*
  760 F. Supp. 36, 36 (E.D.N.Y. 1991)……………………………………...6

*Pizza Hut, Inc. v. Papa John's Intern., Inc.,*
227 F.3d 489, 496 (5th Cir. 2000),
*cert. denied,* 121 S.Ct. 1355 (2001)…………………………………………...11

*Princeton Graphics Operating, L.P. v. NEC Home Electronics (U.S.A.), Inc.,*
  732 F.Supp. 1258, 1267 (S.D.N.Y. 1990)………………………….....13, 14

*Products, Inc. v. Whitney Resources, Ltd.,*
  735 F. Supp. 1154, 1166-1167 (E.D.N.Y. 1990) …………………...…17

Project Strategies Corp. v. National Communs. Corp.,
  38 U.S.P.Q.2d 1053, 1056 (E.D.N.Y. 1995)………………………...…15

*Skil Corp. v. Rockwell Int'l Corp.,*
  375 F. Supp. 777, 782-783 (E.D. Ill. 1974)……………………………7

*SmithKline Beecham Consumer Healthcare LLP v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.,*
  906 F. Supp. 178, 180 (S.D.N.Y. 1995), *aff'd,* 100 F.3d 943 (2d Cir. 1996)…..7

*Standard & Poor's Corp. v. Commodity Exchange,*
  683 F. 2d 704, 710 (2d Cir. 1982)…………………………………….... 14,15

*Telebrands Corp. v. E. Mishan & Sons,*
  Case No. 97 Civ. 1414 (RPP), slip op. at 6 (S.D.N.Y. May 28, 1997)……..….18

*Telebrands v. E. Mishan & Sons,*
  46 U.S.P.Q.2d 1493, 1505, 1508, 1509, 1511 (S.D.N.Y. 1997)…..7, 14, 17, 18

*Telebrands Corp. v. The Media Group, Inc.,*
  45 U.S.P.Q.2d 1342, 1346 (S.D.N.Y. 1997)..…………………………....15-16

*Toy Mfrs. of America Inc. v. Helmsley-Spear, Inc.,*
  960 F. Supp. 673, 682 (S.D.N.Y. 1997)…....................................................14

*Tripledge Products, Inc. v. Whitney Resources, Ltd.,*
  735 F. Supp. 1154, 1166-1167 (E.D.N.Y. 1990)……………………….....17

*United Industries Corp. v. Clorox Co.,*

140 F.3d 1175, 1180 (8th Cir. 1998)……………….....................................11

*Valu Eng'g, Inc. v. Nolu Plastics, Inc.*,
732 F. Supp. 1024, 1025 (N.D Cal. 1990)…………..………………….........7


<u>Statutes and Rules</u>:

15 U.S.C. § 1125(a) …………………………………………………………...…8

Fed. R. Civ. P. 65 ………………………………………………………………1

N.Y. Gen. Bus. Law § 349(a)……………………………………………….…..13

N.Y. Gen. Bus. Law § 350…………………………………………………..…..13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| | : | |
| TPG REWARDS, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 1:08-CV-06396 (JSR) |
| v. | : | |
| | : | |
| QUANTUM LOYALTY SYSTEMS, INC., | : | |
| | : | |
| | : | |
| Defendant. | : | |

_____

### PLAINTIFF TPG REWARD INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION, PURSUANT TO RULE 65(a), FED. R. CIV. P.

## I.    INTRODUCTION

Plaintiff TPG Rewards, Inc. ("TPG") submits this memorandum of law in support of its motion for a preliminary injunction, pursuant to Rule 65(a), Fed. R. Civ. P., to enjoin defendant Quantum Loyalty Systems, Inc. ("Quantum") from competing unfairly with TPG by disseminating false comparative advertising statements which misrepresent its and TPG's services.

TPG and Quantum are direct competitors in the field of providing promotion services to companies who desire to increase sales of their products through incentive awards programs. One such incentive awards program is a movie ticket award program, by which consumers are given free movie tickets for buying certain products. Quantum has distributed a comparative advertisement which falsely states that its movie theatre ticket program is superior to TPG's movie theatre ticket program. Quantum's false advertisement goes further. Not only does it make an invalid claim of

superiority, but it seeks to bolster that claim by providing specific numbers, which are wrong.  Thus, Quantum's false comparative advertisement falsely states the number of participating movie theatre companies, available screens and percentage coverage for TPG's e-MOVIE CASH[TM] program. Quantum knowingly distributed this false information without any prior substantiation in a calculated effort to compete unfairly with TPG, and has continued to do so despite TPG's objection.  Its actions must be stopped.

TPG urgently seeks a preliminary injunction to stop Quantum from disseminating false comparative claims in a blatant effort to divert potential customers from TPG to Quantum with false representations.  Quantum should not reap the benefit of sales which result from such illegal unfair competitive activity.  Unless enjoined by this Court, Quantum will continue its false comparative advertising scheme.  Indeed, despite repeated notifications from TPG that the claims Quantum has made in its false comparative advertisement are false, Quantum has refused to withdraw the offending advertisement, and, apparently, will do so only if the Court issues an Order requiring it to do so.  Unless immediately enjoined by this Court, Quantum will continue to accept new customers for its "Hollywood Movie Money" program who falsely believe that Quantum's movie theatre ticket program offers far more coverage than TPG's comparable program.  Quantum's illegal and unfair competition has irreparably harmed TPG's goodwill and reputation. TPG respectfully seeks entry of a preliminary injunction against Quantum to stop these acts.

## II.    FACTUAL BACKGROUND

Plaintiff TPG Rewards, Inc. is an incentive awards promotion company, which provides promotional services to its customers. (Galinos Decla., para. 2.) TPG formerly was known as The Properties Group, and was an agency of the Interpublic Group of Companies, Inc. ("IPG"). (*Id.*) TPG's President and Chief Executive Officer, Mr. John Galinos, also headed The Properties Group, when it was part of IPG. (*Id.*) Around the same time that Mr. Galinos started The Properties Group, his former boss, Mr. Ron Randolph-Wall, who recently had been terminated from the predecessor of The Properties Group, formed Quantum Loyalty Systems, Inc., a direct competitor of TPG and the Defendant in this action. (*Id.*)

In or about 1994, TPG, through its predecessor, created and developed the MOVIE CASH® incentive awards program. (Galinos Decla., para. 3.) The MOVIE CASH® program awards consumers with free or discounted movie tickets when they purchase certain products sold by customers of TPG. (*Id.*) The consumer receives a traditional paper ticket, a debit card, or an e-ticket. (Galinos Decla., para. 4.) An e-ticket is a movie ticket obtained electronically over the Internet, downloaded and printed by the consumer after activating a promotion code,[1] and contains a 16-digit debit code (the same as found on traditional debit cards) which the consumer presents to the movie theatre for redemption. (Galinos Decla., para. 7.) The movie theatre processes the debit code in the same way that it processes a prepaid debit card, except that the number must be keyed into a POS (point of sale) terminal since there is no physical debit card to swipe. (*Id.*) Paper tickets and debit cards may be delivered to the consumer in the package of the product purchased by the consumer or mailed to the consumer; e-tickets may be printed at home by the consumer after

---

[1] The promotion code is provided to the consumer in the packaging for the product or it may be mailed to the consumer through a promotional mailing. (Galinos Decla., para. 7.)

activating a promotion code. (Galinos Decla., paras. 5-7.) The movie tickets, regardless of their form, may be redeemed at movie theatres throughout the country for admission. (Galinos Decla., para. 8.)

TPG contracts with movie theatres throughout the United States which participate in its various MOVIE CASH® programs. (*Id.*) Acceptance of the movie tickets at a particular theatre depends upon the type of ticket presented. The vast majority of movie theatres in the United States accept the *paper ticket* for admission to their theatres.[2] (*Id.*) The *debit cards* issued by TPG may be presented to any movie theatre which accepts MasterCard. (Galinos Decla., para. 9.) The *e-tickets* issued by TPG are only accepted at theatres which have agreed either to manually enter the debit codes in their credit/debit card terminals, or to fax the debit codes to TPG for validation at certain intervals of time, such as once per day. (*Id.*) This latter procedure is referred to as a "fax back." (*Id.*)

In 2006, TPG adopted the mark e-MOVIE CASH™ to describe the segment of the MOVIE CASH® program which provides promotion codes to consumers which may be used to obtain movie tickets electronically, i.e. e-tickets. (Galinos Decla., para. 10.) Some customers who receive a promotion code, however, do not live near a theatre which has agreed to accept e-tickets. For this reason, TPG's customers may elect to provide such consumers with the option to obtain a paper ticket instead of an e-ticket. (*Id.*) Therefore, the full database of movie theatres which participate in the MOVIE CASH® program is available to TPG customers who select to distribute promotion codes via the e-MOVIE CASH™ program. (*Id.*) Virtually every market throughout the United

---

[2]    AMC Entertainment, Inc. ("AMC"), is one major movie theatre chains which does not accept paper tickets issued by third parties. TPG, however, purchases movie tickets directly from AMC, which it distributes directly to consumers who may then present them to AMC theatres. (Galinos Decla., para. 8.)

States has at least one movie theatre which participates in the MOVIE CASH® program in some manner. (Galinos Decla., para. 14.)

TPG's MOVIE CASH® program, including the segment known as e-MOVIE CASH™, has developed an excellent reputation, and is well known throughout the United States. (Galinos Decla., para. 15.)  TPG owns a United States Service Mark Registration for the mark MOVIE CASH®, which was registered upon the Principal Register of the United States Patent and Trademark Office as Registration No. 2,631,349. (Galinos Decla., para. 16, Ex. 3.)

Defendant Quantum is in the same business as TPG, and is a direct competitor.  Since about May of this year, Quantum has been distributing a comparative advertisement which falsely promotes Quantum's "Hollywood Movie Money" program as supposedly having a "Superior Theater Network," as compared to TPG's e-MOVIE CASH™ program, and contains very specific numbers which Quantum uses to bolster its false claims. (Galinos Decla., para. 17, Ex. 4.)  The numbers, however, are literally false by a significant margin. (Galinos Decla., paras. 17-18.)  The number of movie theatres which participate in the e-MOVIE CASH™ program depends on the particulars of the program, and may vary from those theatres which accept only e-tickets to every movie theatre in the United States which accepts paper tickets. (Galinos Decla., para. 18.)  By representing that TPG's e-MOVIE CASH™ program has only half the coverage of Quantum's "Hollywood Movie Money" program, Quantum has knowingly engaged in a campaign of misinformation to deceive the purchasing public in order to fuel sales of its "Hollywood Movie Money" program at the expense of TPG.

By promoting its "Hollywood Movie Money" program with false statements, Quantum seeks to create the false impression that its movie ticket program is superior to TPG's.  This false

advertising is particularly injurious to TPG because Quantum's false claims are made in a comparative advertisement expressly mentioning TPG's e-MOVIE CASH™ program and expressly providing wrong numbers. The inevitable consequence of this deceptive activity is a diversion of sales from TPG and damage to its goodwill and reputation, and for that reason, TPG seeks immediate injunctive relief.

## III.    ARGUMENT

### A.    The Applicable Principles of Law

In the Second Circuit, a party seeking a preliminary injunction must show (a) that it will suffer irreparable harm if relief is denied, and (b) either: (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation, and a balance of hardships tipping decidedly in plaintiff's favor. *Fisher-Price, Inc. v. Well-Made Toy Manufacturing Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)(per curiam).

In false advertising cases, a showing of likelihood of success establishes the requisite showing of irreparable harm. *Coca-Cola Company v. Tropicana Products, Inc.*, 690 F.2d 312, 317 (2d Cir. 1982). In particular, where plaintiff has established a likelihood of success in showing that a defendant's comparative advertising referring to plaintiff is literally false, irreparable harm will be presumed. *Johnson & Johnson v. Procter & Gamble*, 285 F. Supp. 2d 389, 393 (S.D.N.Y. 2003); *Castrol, Inc. v. Quaker State Corporation*, 977 F.2d 57, 62 (2d Cir. 1992); *see McNeilab, Inc. v. America Home Products Corp.*, 848 F.2d 34, 38 (2d Cir. 1988); *Nester's Map & Guide Corp. v. Hagstrom Map Co.*, 760 F. Supp. 36, 36 (E.D.N.Y. 1991); *Valu Eng'g, Inc. v. Nolu Plastics, Inc.*, 732 F. Supp. 1024, 1025 (N.D Cal. 1990).

**B.**    <u>**TPG Is Likely To Prevail On Its False Advertising Claim**</u>

The Second Circuit has recognized a strong public policy against false and misleading advertising.  *SmithKline Beecham Consumer Healthcare LLP v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 906 F. Supp. 178, 180 (S.D.N.Y. 1995), *aff'd*, 100 F.3d 943 (2d Cir. 1996).  Authority for enjoining false advertising arises from Section 43(a) of the Lanham Act, which prohibits false advertising.[3] False advertising includes that which is literally false (false on its face), as well as that which is literally true but which tends to mislead or confuse consumers.  *Id.*  A claim for false advertising must involve a material statement which is likely to influence a customer's purchasing decision.  *Id.* at 181 (*citing Skil Corp. v. Rockwell Int'l Corp.*, 375 F. Supp. 777, 782-83 (E.D. Ill. 1974)).  Where an advertising claim is determined to be false, it is presumed to be material.  *Telebrands v. E. Mishan & Sons*, 46 U.S.P.Q.2d 1493, 1509 (S.D.N.Y. 1997). Plaintiff is not required to prove that purchasers were actually deceived to prevail on its claim for injunctive relief.  *American Brands, Inc. v. R.J. Reynolds Tobacco Co.*, 413 F. Supp. 1352, 1356 (S.D.N.Y. 1976); *Geisel v. Poynter Products, Inc.*, 283 F. Supp. 261, 267-68 (S.D.N.Y. 1968).

---

[3]  Section 43(a) of the Lanham Act provides in pertinent part:

> (1) Any person who, on or in connection with any goods or services, . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
>
> * * *
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

7

A court may enjoin an advertisement which is expressly or literally false without reference to its effect on the buying public. *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991). On the other hand, it may enjoin an advertisement which is impliedly false only if the court can determine that the advertisement is confusing or deceiving, as determined by public reaction to a consumer survey or market research. *Coca-Cola*, 690 F.2d at 317; *American Home Products Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987). In the present case, the statements made by Quantum in its advertising are literally false, so no consumer survey or market research is necessary to determine the effect of those statements on customers.

Applying these legal principles to the case at bar, it is readily apparent that Quantum's false comparative advertisement (Galinos Decla., Ex. 4) contains material statements which are literally false about the coverage available to customers of its "Hollywood Movie Money" program and the coverage available to customers of TPG's e-MOVIE CASH[TM] program. In particular, Quantum's false comparative advertisement contains the following expressly false statements:

With respect to TPG's e-MOVIE CASH[TM] program:

- "200 Participating Movie Theater Companies"

- "17,981 Screens"

- "49% Coverage"

With respect to Quantum's "Hollywood Movie Money" program:

- "Superior Theater Network"

- "36,049 Screens"

- "98.5% Coverage"

In addition, Quantum's false comparative advertisement is false overall because it compares apples

to oranges.  Each of the statements identified above is false for the reasons set forth below.

       1.   *Quantum's comparison of dissimilar services is false.*

     Quantum's false comparative advertisement is false on its face because it compares two services which are not in the same category.  A comparative advertisement which suggests that two products or services are similar or comparable, when they are not, is false. *Cartier Inc. v. Deziner Wholesale L.L.C.*, 55 U.S.P.Q.2d 1131, 1134-35 (S.D.N.Y. 2000).  In this case, both parties provide promotion services which include incentive awards programs featuring free movie theatre tickets.  In addition, both parties offer paper ticket and e-ticket options to their customers.  (Galinos Decla., para. 20.)  Quantum's program is known as "Hollywood Movie Money."  The "Hollywood Movie Money" program includes both paper ticket and e-ticket delivery options.  (*Id.*)  Quantum does not call the e-ticket portion of its program "e-Hollywood Movie Money," but rather lumps both parts of its program under the umbrella "Hollywood Movie Money."  TPG's movie ticket program is known as the MOVIE CASH® program, and also includes both paper ticket and e-ticket options.  (Galinos Decla., para. 4.)  TPG, however, refers to the e-ticket portion of its program as e-MOVIE CASH[TM].  In its false comparative advertisement, Quantum compares its entire "Hollywood Movie Money" program to only the e-ticket portion of TPG's e-MOVIE CASH[TM] program.  Such a comparison is false on its face.  Quantum is fully aware that TPG provides a movie theatre ticket program which is comparable in scope to the "Hollywood Movie Money" program, yet it chose to compare its program instead to the more limited e-MOVIE CASH[TM] program.

     When engaging in comparative advertising, competitors are admonished to compare like products and services only.  For example, it would be false advertising to compare the high end of one's automobile fleet to the low end of a competitor's automobile fleet.  *Cf. Media Arts*

*International Ltd. v. Trillium Health Products*, 25 U.S.P.Q.2d 1764, 1769 (E.D. Pa. 1992). The same result follows here. By comparing its most comprehensive movie theatre ticket program to a subset of TPG's MOVIE CASH® incentive program, Quantum has engaged in false comparative advertising. For this reason alone, TPG is likely to succeed on the merits.

     *2.   Quantum's claims about TPG's e-MOVIE CASH™ program are literally false.*

Quantum's false comparative advertisement contains specific representations as to the number of movie theatre companies which participate in the e-MOVIE CASH™ program, as to the number of movie theatre screens available at theatres accepting e-MOVIE CASH™ tickets, and the percentage coverage of U.S. movie screens. Each of these factual representations is false. (Galinos Decla., para. 17.) All of the numbers presented to potential customers by Quantum are incorrect by a significant margin, and, thus, are expressly false. (Galinos Decla., para. 18.)[4] Indeed, Quantum had no basis or substantiation for the numbers. (Galinos Decla., para. 21.) The numbers literally were made up!

In addition, customers of TPG's e-MOVIE CASH™ program have the option of including other features from the more general MOVIE CASH® program, such as paper ticketing, which increases the number of participating theatre companies and available screens well beyond those which pertain specifically to the e-ticket portion of TPG's MOVIE CASH® business. (Galinos Decla., para. 12.) The theatre coverage for the e-MOVIE CASH™ program is the same as the scope of coverage available for the more general MOVIE CASH® program. (Galinos Decla., para. 10.) By attempting to represent the scope of the e-MOVIE CASH™ program without including these other options, which are available to all customers of TPG, Quantum is engaging in false,

---

[4]   If necessary, TPG will provide the actual numbers to the Court for *in camera* review.

deceptive advertising for the purpose of gaining a competitive advantage.

          3.   *Quantum's claims about its own "Hollywood Movie Money" program are literally false.*

      Not only has Quantum significantly understated the coverage of TPG's e-MOVIE CASH[TM] program, but it also has disseminated false information about its own "Hollywood Movie Money" program. Thus, Quantum's statement that its "Hollywood Movie Money" program has a "Superior Theater Network" as compared to TPG's e-MOVIE CASH[TM] program is literally false. General superiority claims which are vague and not tied to any specific facts may be non-actionable "puffery." *United Industries Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998). However, when superiority claims are tied to specific facts, they transform non-actionable puffery to actionable statements of fact. *See Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 496 (5th Cir. 2000), *cert. denied*, 532 U.S. 920 (2001). In the present case, Quantum purports to cite to specific "facts" to support its claim of superiority. As explained above, its so-called "facts" are wrong. Thus, its claim of superiority is actionable as false advertising.

      The Second Circuit has held that "where the defendant's advertisement claims that its product is superior, plaintiff must affirmatively prove defendant's product equal or inferior." *Castrol, Inc. v. Quaker State Corporation*, 977 F.2d 57, 63 (2d Cir. 1992). The evidence in this case clearly shows that a TPG customer who chooses an e-MOVIE CASH[TM] program may incorporate paper ticketing into its program so that consumers receiving a movie ticket through the program can redeem it at the vast majority of movie theatres in the United States.[5] (Galinos Decla., para. 12.) At

---

5  The only large movie chain which does not participate in TPG's MOVIE CASH® program is AMC Entertainment Inc. (Galinos Decla., para. 8.) However, TPG purchases tickets directly from AMC which it then distributes to consumers who desire to use their MOVIE CASH® tickets at an AMC theatre. (*Id.*)

most, the movie tickets issued by Quantum through its "Hollywood Movie Money" program also may be used at the vast majority of movie theatres in the United States. Since Quantum's coverage is, at most, equal to TPG's coverage, its "Hollywood Movie Money" program theatre network is, at best, equivalent to TPG's. Thus, TPG is likely to prove at trial that Quantum's superiority claim is false.

Quantum's second statement, that Quantum's "Hollywood Movie Money" program theatre network includes "36,049 Screens," also is literally false. There are approximately 39,000 movie theatre screen in the United States as of 2007. (Galinos Decla., para. 13, Ex. 2.) One movie theater company, AMC Entertainment Inc. ("AMC") owns approximately 4,000 screens in the United States. (Galinos Decla., para. 8.) AMC does not participate in Quantum's "Hollywood Movie Money" program. (*Id.*) Therefore, at most, Quantum has approximately 35,000 screens available at participating movie theater companies. Its claim that it has 36,049 screens is expressly false.

The third statement, that Quantum's "Hollywood Movie Money" program theatre network has "98.5% Coverage" also is literally false. Because there are approximately 39,000 movie theatre screens in the United States (Galinos Decla., para. 13, Ex. 2), Quantum is falsely representing that 38,415[6] screens are available through its "Hollywood Movie Money" program. This is false. Quantum admits to having at most 36,049 available screens. This translates to 92.4% coverage. In addition, as discussed above, the number of screens available to consumers receiving Quantum movie tickets through its "Hollywood Movie Money" program is likely no more than 35,000, or 89.7%. Under either scenario, the number of screens available through Quantum's "Hollywood Movie Money" program is far less than 38,415, so its representation of having 98.5% coverage is

---

[6] $38,415 = 39,000 \times 98.5\%$

expressly false.[7]

**C.    TPG Also Is Likely To Prevail On Its Claims
Under New York G.B.L. §§ 349 and 350**

Section 349 of the New York General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service. . . ." N.Y. Gen. Bus. Law § 349(a).  Section 350 makes unlawful "[f]alse advertising in the conduct of any business."  N.Y. Gen. Bus. Law § 350.  In order to recover under either section, Plaintiff must show that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F.Supp.2d 439, 450 (S.D.N.Y. 2007) (citation omitted).  As discussed above, in connection with TPG's Lanham Act claims, Quantum's false statements are deceptive, are directed at consumers, are material, and have injured TPG.  Thus, TPG is likely to succeed on its state law claims.  *See, e.g., Princeton Graphics Operating, L.P. v. NEC Home Electronics (U.S.A.), Inc.*, 732 F.Supp. 1258, 1267 (S.D.N.Y. 1990).  Given the deceptive nature of Defendant's unlawful conduct as described above, Plaintiff will likely establish that Defendant has engaged in deceptive conduct in violation of Sections 349 & 350 of the New York General Business Law.  Moreover, Defendant's false, deceptive and misleading conduct is injuring Plaintiff and the consuming public by depriving them of true and accurate information when making a purchasing decision.

Finally, this Court has held that "the standards for a violation under section 350-d are

---

7  According to Quantum's false comparative advertisement, if 36,049 screens represents 98.5% coverage, there would be approximately 36,600 screens in the country, which is far less than the true number of screens.  (Galinos Decla., Ex. 2.)

13

substantially the same as under section 43(a).'"[8] *Princeton Graphics Operating,* 732 F.Supp. at 1267. Accordingly, Plaintiff's entitlement to preliminary injunctive relief is co-extensive under the federal and state claims alleged.

**D.    TPG Is Likely To Prevail On Its Claim of New York Unfair Competition**

New York statutory and common law provide injunctive relief for conduct specifically designed to capitalize on another's initiative and goodwill. *Telebrands Corp. v. E. Mishan & Sons*, 46 U.S.P.Q.2d 1493, 1508 (S.D.N.Y. 1997); *Toy Mfrs. of America Inc. v. Helmsley-Spear, Inc.*, 960 F. Supp. 673, 682 (S.D.N.Y. 1997).  The Second Circuit has summarized the New York common law of unfair competition in *Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704, 710 (2d Cir. 1982):

> [T]his amorphous cause of action has been broadly described as encompassing *any form of commercial immorality*, or simply as endeavoring to reap where [one] has not sown; it is taking the skill, expenditures and labors of a competitor and misappropriati[ng] for the commercial advantage of one person . . . a benefit or property right belonging to another.  The tort is adaptable and capacious. [Citations omitted.]

The facts set forth above demonstrate that Quantum has committed unfair competition against TPG.  Quantum is promoting its services as superior to TPG's when they are not.  Quantum is intentionally misleading potential purchasers by comparing apples to oranges and presenting specific numbers which are incorrect.  Indeed, Quantum's use of specific numbers in its false comparative advertisement suggests that it did a thorough analysis before disseminating its false comparative advertisement, but in fact it had not done any analysis, but rather attempted to construct a *post hoc* rationalization for its incorrect numbers.  (Galinos Decla., paras. 21-28.)  The predictable

---

[8]   Section 350-d of the New York General Business Law grants a private right of action under Section 350.

14

result of this activity is deception in the marketplace.  New York unfair competition law simply does

not tolerate such misdeeds.  *Project Strategies Corp. v. National Communs. Corp.*, 38 U.S.P.Q.2d

1053, 1056 (E.D.N.Y. 1995).  Quantum's unfair competitive acts should be enjoined.  *Standard &*

*Poor's Corp.*, 683 F.2d at 710.

### E.    Plaintiff Will Be Irreparably Injured If Defendant's False Comparative Advertising Is Not Enjoined

In false advertising cases, the paramount public interest in truthful advertising creates an

inference of irreparable injury, where the parties are competitors.    *Coca-Cola Company v.*

*Tropicana Products, Inc.*, 690 F.2d 312, 317 (2d Cir. 1982).  In *Coca-Cola*, the Second Circuit

explained the cause and effect relationship between false advertising by a competitor and irreparable

injury to the plaintiff:

> If Tropicana's advertisement misleads consumers into believing that
> Premium Pack is a more desirable product because it contains only
> fresh-squeezed, unprocessed juice, then it is likely that Coke will lose
> a portion of the chilled juice market and thus suffer irreparable injury.

It also has been held that "[i]f consumers are misled by defendant's advertising into believing

something about the product that makes it more desirable than it would otherwise be, and if plaintiff

and defendant are direct competitors, then it is likely that plaintiff will lose business because

consumers will unfairly choose defendant's product over plaintiff's, and plaintiff will suffer

irreparable injury."  *Telebrands Corp. v. The Media Group, Inc.*, 45 U.S.P.Q.2d 1342, 1346

(S.D.N.Y. 1997).  In this case, Quantum has disseminated false comparative statements which have

misled the public into believing that Quantum's movie ticket program is more desirable than TPG's

program.  As a result, TPG is likely to suffer from a loss of business, and has been and will continue

to be irreparably injured.

15

TPG and Quantum are the two major promotion companies which provide incentive awards programs, such as movie ticket rewards, to marketers who seek to promote their products and services to consumers. (Galinos Decla., para. 29.) Quantum sells its services to the same types of customers as TPG. TPG and Quantum advertise in some of the same publications and attend some of the same trade shows. (Galinos Decla., para. 31.) TPG and Quantum compete for the same business. The customers of TPG and Quantum, i.e. marketers of products or services, which desire an incentive awards program, will choose between TPG and Quantum or perhaps another provider of such services for that program. (Galinos Decla., para. 32.) Customers who purchase Quantum's services for a particular type of program, e.g. a movie ticket program, will not purchase TPG's services for that program because both parties offer similar promotion services. (*Id.*) TPG has lost at least one customer, Safeway, to Quantum so far. (*Id.*) Any customer who so chooses Quantum over TPG is a lost customer of TPG. (*Id.*)

In addition, where, as here, TPG faces not only a loss of customers, but also loss to goodwill and market share, it has met its burden of demonstrating irreparable harm. *Johnson & Johnson*, 285 F. Supp. 2d at 394.

### F.    The Balance of Hardships Tips Decidedly In TPG's Favor

Finally, the balance of hardships tips decidedly in TPG's favor. TPG has invested heavily in its MOVIE CASH® program. TPG's and Quantum's customers, when confronted with both services, will have to choose between the two. Because Quantum has falsely represented that it can provide almost double the movie theatre coverage that TPG can provide, customers are likely to reject TPG's services. *See Telebrands Corp. v. E. Mishan & Sons*, 46 U.S.P.Q.2d 1493, 1505 (S.D.N.Y. 1997). This is an extreme hardship for TPG.

The only harm Quantum may suffer by being enjoined is having to abandon an advertising campaign which it never should have begun.  Indeed, in response to TPG's repeatedly informing it that its comparative claims are false, Quantum chose to ignore that information and to continue to distribute its false and misleading comparative advertisements.  Thus, the balance of hardships tips in TPG's favor.  *See Johnson & Johnson*, 285 F. Supp. 2d at 394.

### G.    The Public Interest Weighs In TPG's Favor

Quantum's false advertising deprives the purchasing public of true and accurate information when making a purchasing decision.  By enjoining Quantum's false advertising, the public interest would be served.

### H.    The Scope of the Injunction

Because TPG is likely to succeed on the merits of its claim for false advertising, the Court should enjoin Quantum not only from disseminating the false advertisement and the information contained in the advertisement, but also from accepting new orders or creating incentive awards programs for customers whose business resulted from its false comparative advertising.  *Tripledge Products, Inc. v. Whitney Resources, Ltd.*, 735 F. Supp. 1154, 1166-67 (E.D.N.Y. 1990).  Quantum also should be required to refund all monies received in response to its false advertising.  *Id.*  In the present case, Quantum has disseminated a false and misleading message to the public and trade and has created deception in the marketplace concerning the characteristics of its services and TPG's services in order to boost sales at TPG's expense. Accordingly, Quantum should be enjoined from reaping a benefit from its deceptive actions.

If Quantum were permitted to create new comparative advertising for its services and to continue to compare its services to TPG's services, Quantum undoubtedly would receive business

17

from those who are responding to its prior false promotional campaign or who at least have the prior false representations in mind. *Telebrands Corp. v. E. Mishan & Sons*, 46 U.S.P.Q.2d 1493, 1511 (S.D.N.Y. 1997). To prevent Quantum from benefitting from its prior false advertising, Quantum should be enjoined from distributing any advertising or promoting material comparing its services to TPG's services for a period of six months in order to purge the taint of its illegal actions. *Telebrands Corp. v. E. Mishan & Sons*, Case No. 97 Civ. 1414 (RPP), slip op. at 6 (S.D.N.Y. May 28, 1997); *Matsushita Electric Corp. of America v. Solar Sound Sys., Inc.*, 381 F. Supp. 64, 70 (S.D.N.Y. 1974).

Finally, where, as here, defendant's comparative advertising claims are not supported by the facts, it is within the Court's discretion to enjoin not only the particular claims at issue, but also any other claims of superiority. *Castrol, Inc. v. Quaker State Corporation*, 977 F.2d 57, 66 (2d Cir. 1992).

A form of a proposed preliminary injunction is submitted herewith.

18

IV.    **CONCLUSION**

Based upon the facts and authorities set forth in this memorandum and the accompanying declaration and the exhibits thereto, TPG respectfully submits that it has demonstrated grounds for entry of a preliminary injunction barring defendant from engaging in false comparative advertising during the pendency of this action.

Respectfully submitted,


Dated:  August 1, 2008
    /s/ Robert T. Maldonado
    Robert T. Maldonado (RM 7873)
    Norman H. Zivin (NZ 6053)
    Tonia A. Sayour (TS 7208)
    COOPER & DUNHAM LLP
    1185 Avenue of the Americas
    New York, New York  10036
    Tel. (212) 278-0400
    Fax. (212) 391-0525
    E-mail: RMaldonado@cooperdunham.com

    ATTORNEYS FOR PLAINTIFF
    TPG REWARDS, INC.