UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| TPG REWARDS, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 08-CV-06396 (JSR) |
| v. | : | |
| | : | |
| QUANTUM LOYALTY SYSTEMS, INC., | : | |
| | : | <u>JURY TRIAL DEMANDED</u> |
| | : | |
| Defendant. | : | |

_____:

## FIRST AMENDED COMPLAINT

Plaintiff TPG Rewards Inc. for its First Amended Complaint against Defendant Quantum Loyalty Systems, Inc. hereby alleges as follows:

### THE PARTIES

1.      Plaintiff TPG Rewards, Inc. ("TPG") is a Delaware corporation having a place of business at 111 John Street, 27th Floor, New York, New York  10038 ("TPG").

2.      On information and belief, defendant Quantum Loyalty Systems, Inc. ("Quantum") is a Nevada corporation having a place of business at 926 Incline Way, Suite 200, Incline Village, Nevada 89451.  On information and belief, Quantum does business throughout the United States, and within this Judicial District.

### NATURE OF CLAIMS AND BASIS FOR JURISDICTION AND VENUE

3.      This is an action for false advertising and unfair competition based upon a false comparative advertisement distributed by defendant, and for service mark infringement.

4.    This action arises under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the statutes and laws of the State of New York.  This court has jurisdiction over the federal claims in this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

5.    Jurisdiction over the state claims is based upon 15 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

6.    Venue is proper within this Judicial District under 28 U.S.C. §§ 1391(b) and (c).

## ALLEGATIONS COMMON TO ALL CLAIMS

7.    TPG has been in the business of creating a variety of incentive awards programs for its customers since at least 2006.

8.    TPG has adopted and used in interstate commerce, and owns a family of over forty (40) service marks for its various incentive awards programs, each of which ends with the word CASH (collectively, "TPG's CASH Family of Service Marks"), including:

- MOVIE CASH
- e-MOVIE CASH
- i-MOVIE CASH
- m-MOVIE CASH
- CONCESSION CASH
- DVD CASH
- ELECTRONICS CASH
- PAY-PER-VIEW CASH
- CABLE CASH

2

- MUSIC CASH

- PIZZA CASH

- DINING CASH

- BOOK CASH

- TOY CASH

- AMUSEMENT PARK CASH

- SPA WELLNESS CASH

- HOUSE & HOME CASH

- GAME & SOFTWARE CASH

- MUSEUM CASH

- ZOO CASH

- GOLF CASH

- SOCCER CASH

- SPORTING GOODS CASH

- PET CASH

- COSMETIC CASH

- GAS CASH

- LONG DISTANCE CASH

- PHOTO CASH

- MOBILE PHONE CASH

- HOME HEATING CASH

- UTILITY CASH

- GROCERY CASH

- PHARMACY CASH

- FASHION CASH

- HEALTHY LIVING CASH

- MOVIE CASH PLUS

- ENTERTAINMENT CASH

- HOLIDAY CASH

- SPRING BREAK CASH

- BACK TO SCHOOL CASH

- FAMILY FUN CASH

- CREATE YOUR OWN CASH

### *The MOVIE CASH® Program*

9.    One such program is the MOVIE CASH® program, which is an incentive awards program created by TPG's predecessor in or about 1994.   Other such incentive awards programs include the MUSIC CASH® program, which was created at least as early as 1996; the GAS CASH® program, which was created at least as early as 2000; the DVD CASH ™ program, which was created at least as early as 2001; and the ENTERTAINMENT CASH™ program, which was created at least as early as 2005.

10.    In particular, the MOVIE CASH® program rewards purchasers of certain products with free or discounted movie tickets redeemable at movie theatres throughout the United States. The MOVIE CASH® program is intended to boost product sales by attracting consumers with the offer of a free or discounted movie ticket in connection with the purchase of a particular product.

11.    The MOVIE CASH® program provides for a variety of means for delivering the movie ticket to the consumer.  The movie ticket may be a traditional paper ticket which may be mailed to the consumer or packaged with the product being sold to the consumer.  An example of such a ticket is reproduced below:



The printed movie ticket is also referred to as a check-based product, because the movie theatre owner deposits the printed movie ticket into its bank account, and it is paid as other checks are paid.

12.    Another method of delivery used by the MOVIE CASH® program is by providing an actual prepaid debit card to the purchaser of the product, which is either mailed to the consumer or packaged with the product being sold to the consumer.  An example of such a ticket is reproduced below:



The consumer presents the debit card to the movie theatre for redemption, the same as it would any debit card.

13.    A third method of delivery used by the MOVIE CASH® program is by providing the purchaser of the product with a redemption code, which is either mailed to the consumer or packaged with the product being sold to the consumer.  The consumer may use the redemption code to obtain a movie ticket electronically, which then may be printed at home.  The movie ticket contains a 16-digit debit code (the same as found on traditional debit cards) which the consumer presents to the movie theatre for redemption, similar to the prepaid debit card described above.  An example of such a ticket is reproduced below:



6

Programs where the movie ticket debit codes are delivered electronically are often referred to as e-MOVIE CASH™ programs.

14.     TPG customizes each reward program based upon the customer's individual needs. A customer may desire to use a combination of delivery methods for the movie tickets issued by the MOVIE CASH® program.  For example, a customer may elect to set up an e-MOVIE CASH™ program, where the redemption codes may be redeemed either to receive a debit code electronically as described in the preceding paragraph, or to receive a traditional paper ticket (check-based product) by mail, as described in paragraph 8 above.  Such an e-MOVIE CASH™ program would provide a consumer with a movie ticket which may be used at a movie theatre in virtually any market of the United States.

15.     On information and belief, there were approximately 38,794 movie theatre screens in the entire United States as of 2007.  Virtually every market throughout the United States has at least one movie theatre which participates in the MOVIE CASH® program in some manner.  TPG maintains a variety of databases of participating movie theatres.  TPG may customize databases for each MOVIE CASH® program according to the customer's particular needs.  For example, a customer may desire to direct consumers only to movie theatres which serve certain beverages, for example, Coca Cola.

16.     Consumers who receive a movie ticket through any of the various MOVIE CASH® programs are informed of which website to visit to locate movie theatres which participate in that particular MOVIE CASH® program.  These websites are referred to as movie theatre locators.  An example of such a locator is www.emoviecash.com/locator.  The locators may be customized according to a customer's needs to include as few or as many theatres as desired.

7

### *The MOVIE CASH® Service Mark*

17.     At least as early as February 28, 1994, TPG's predecessor adopted and first used the service mark MOVIE CASH® in connection with promoting the goods and services of others through the administration of consumer incentive awards programs, featuring redeemable certificates, in interstate commerce.

18.     Continuously since at least February 28, 1994, TPG and its predecessor have marketed, sold and offered for sale in interstate commerce its incentive awards services under its service mark MOVIE CASH®.

19.     TPG and its predecessor have spent a considerable amount of money in establishing the service mark MOVIE CASH® in the minds of customers as a source of quality incentive awards services.

20.     As a result of TPG's extensive promotional, marketing and sales efforts during this period, the reputation of the service mark MOVIE CASH® continuously has grown among the general public and the mark now is well and favorably known throughout the United States as a source of origin for incentive awards services. TPG's services, sold under the service mark MOVIE CASH®, have enjoyed an outstanding nationwide reputation for high quality.

21.     The MOVIE CASH® program is an extremely successful marketing program for TPG and has been in high demand since it was first introduced. Indeed, TPG's billings now exceed $20 million annually.

22.     The MOVIE CASH® program is directed to customers and reaches customers throughout the United States and within this Judicial District. TPG also maintains a website at www.tpgrewards.com.

23.     The service mark MOVIE CASH® is distinctive and famous as applied to incentive awards services.

24.     TPG's service mark MOVIE CASH® has been registered for promoting the goods and services of others through the administration of consumer incentive awards programs, featuring redeemable certificates, upon the Principal Register of the United States Patent and Trademark Office as Registration No. 2,631,349, which issued October 8, 2002.  TPG is the owner by assignment of this registration.  A copy of this registration is attached hereto as Exhibit A.  The registration is valid, subsisting and incontestable.

### *The MUSIC CASH® Service Mark*

25.     At least as early as March 1, 1996, TPG's predecessor adopted and first used the service mark MUSIC CASH® in connection with promoting the goods and services of others through the administration of consumer incentive awards programs, featuring redeemable certificates, in interstate commerce.

26.     Continuously since at least March 1, 1996, TPG and its predecessor have marketed, sold and offered for sale in interstate commerce its incentive awards services under its service mark MUSIC CASH®.

27.     TPG and its predecessor have spent a considerable amount of money in establishing the service mark MUSIC CASH® in the minds of customers as a source of quality incentive awards services.

28.     As a result of TPG's extensive promotional, marketing and sales efforts during this period, the reputation of the service mark MUSIC CASH® continuously has grown among the general public and the mark now is well and favorably known throughout the United States as a

9

source of origin for incentive awards services.  TPG's services, sold under the service mark MUSIC CASH®, have enjoyed an outstanding nationwide reputation for high quality.

29.    The MUSIC CASH® program is an extremely successful marketing program for TPG and has been in high demand since it was first introduced.

30.    The MUSIC CASH® program is directed to customers and reaches customers throughout the United States and within this Judicial District.

31.    The service mark MUSIC CASH® is distinctive and famous as applied to incentive awards services.

32.    TPG's service mark MUSIC CASH® has been registered for promoting the goods and services of others through the administration of consumer incentive awards programs, featuring redeemable certificates, upon the Principal Register of the United States Patent and Trademark Office as Registration No. 2,170,041, which issued June 30, 1998.  TPG is the owner by assignment of this registration.  A copy of this registration is attached hereto as Exhibit B.  The registration is valid, subsisting and incontestable.

### The GAS CASH® Service Mark

33.    At least as early as September 30, 2000, TPG's predecessor adopted and first used the service mark GAS CASH® in connection with promoting the goods and services of others through the administration of consumer incentive awards programs, featuring redeemable certificates, in interstate commerce.

34.    Continuously since at least September 30, 2000, TPG and its predecessor have marketed, sold and offered for sale in interstate commerce its incentive awards services under its service mark GAS CASH®.

35.    TPG and its predecessor have spent a considerable amount of money in establishing the service mark GAS CASH® in the minds of customers as a source of quality incentive awards services.

36.    As a result of TPG's extensive promotional, marketing and sales efforts during this period, the reputation of the service mark GAS CASH® continuously has grown among the general public and the mark now is well and favorably known throughout the United States as a source of origin for incentive awards services.  TPG's services, sold under the service mark GAS CASH®, have enjoyed an outstanding nationwide reputation for high quality.

37.    The GAS CASH® program is an extremely successful marketing program for TPG and has been in high demand since it was first introduced.

38.    The GAS CASH® program is directed to customers and reaches customers throughout the United States and within this Judicial District.

39.    The service mark GAS CASH® is distinctive and famous as applied to incentive awards services.

40.    TPG's service mark GAS CASH® has been registered for promoting the goods and services of others through the administration of consumer incentive awards programs, featuring redeemable certificates, upon the Principal Register of the United States Patent and Trademark Office as Registration No. 2,582,293, which issued June 18, 2002.  TPG is the owner by assignment of this registration.  A copy of this registration is attached hereto as Exhibit C.  The registration is valid, subsisting and incontestable.

### *The DVD CASH<sup>TM</sup> Service Mark*

41.    At least as early as January 1, 2001, TPG's predecessor adopted and first used the service mark DVD CASH<sup>TM</sup> in connection with promoting the goods and services of others through the administration of consumer incentive awards programs, featuring redeemable certificates, in interstate commerce.

42.    Continuously since at least January 1, 2001, TPG and its predecessor have marketed, sold and offered for sale in interstate commerce its incentive awards services under its service mark DVD CASH<sup>TM</sup>.

43.    TPG and its predecessor have spent a considerable amount of money in establishing the service mark DVD CASH<sup>TM</sup> in the minds of customers as a source of quality incentive awards services.

44.    As a result of TPG's extensive promotional, marketing and sales efforts during this period, the reputation of the service mark DVD CASH<sup>TM</sup> continuously has grown among the general public and the mark now is well and favorably known throughout the United States as a source of origin for incentive awards services.  TPG's services, sold under the service mark DVD CASH<sup>TM</sup>, have enjoyed an outstanding nationwide reputation for high quality.

45.    The DVD CASH<sup>TM</sup> program is an extremely successful marketing program for TPG and has been in high demand since it was first introduced.

46.    The DVD CASH<sup>TM</sup> program is directed to customers and reaches customers throughout the United States and within this Judicial District.

47.    The service mark DVD CASH<sup>TM</sup> is distinctive and famous as applied to incentive awards services.

## *The ENTERTAINMENT CASH<sup>TM</sup> Service Mark*

48.     At least as early as March 7, 2005, TPG's predecessor adopted and first used the service mark ENTERTAINMENT CASH<sup>TM</sup> in connection with promoting the goods and services of others through the administration of consumer incentive awards programs, featuring redeemable certificates, in interstate commerce.

49.     Continuously since at least March 7, 2005, TPG and its predecessor have marketed, sold and offered for sale in interstate commerce its incentive awards services under its service mark ENTERTAINMENT CASH<sup>TM</sup>.

50.     TPG and its predecessor have spent a considerable amount of money in establishing the service mark ENTERTAINMENT CASH<sup>TM</sup> in the minds of customers as a source of quality incentive awards services.

51.     As a result of TPG's extensive promotional, marketing and sales efforts during this period, the reputation of the service mark ENTERTAINMENT CASH<sup>TM</sup> continuously has grown among the general public and the mark now is well and favorably known throughout the United States as a source of origin for incentive awards services.  TPG's services, sold under the service mark ENTERTAINMENT CASH<sup>TM</sup>, have enjoyed an outstanding nationwide reputation for high quality.

52.     The ENTERTAINMENT CASH<sup>TM</sup> program is an extremely successful marketing program for TPG and has been in high demand since it was first introduced.

53.     The ENTERTAINMENT CASH<sup>TM</sup> program is directed to customers and reaches customers throughout the United States and within this Judicial District.

54.    The service mark ENTERTAINMENT CASH$^{TM}$ is distinctive and famous as applied to incentive awards services.

### *Quantum's Unfair Competitive Activities*

55.    On information and belief, defendant Quantum advertises, promotes, distributes, offers for sale, and sells incentive awards program services, in interstate commerce throughout the United States and the State of New York.

56.    On information and belief, Quantum offers an incentive awards program under the name "Hollywood Movie Money," which provides movie theatre tickets to consumers who purchase certain products from Quantum's customers. On information and belief, the "Hollywood Movie Money" program includes both paper movie tickets, delivered by mail or packaged with the product being sold, and electronic movie tickets, which are obtained electronically through activation codes entered on a Quantum website.

57.    Quantum is a direct competitor of TPG in the market for incentive awards program services.

58.    On information and belief, when Quantum first introduced its movie theatre ticket incentive awards program, Quantum used the designation "Hollywood Movie Magic" for the program. On information and belief, Quantum owns a federal service mark registration for the service mark "Hollywood Movie Magic," U.S. Registration No. 2,653,583, which states that the service mark was first used by Quantum or its predecessor in 1996. Quantum later changed the name of its program to "Hollywood Movie Money" so that its designation would be confusingly similar to TPG's MOVIE CASH® program.

59.    On information and belief, at times Quantum refers to its program as "Movie Money," without the modifier "Hollywood," so as to cause customer confusion with TPG's MOVIE CASH® program, and so as to misappropriate the valuable goodwill and reputation of TPG.

60.    Quantum has engaged in a series of acts to compete unfairly with TPG as part of a calculated scheme to trade upon TPG's goodwill and reputation.  These unfair competitive acts include acts of false comparative advertising and service mark infringement.

61.    On information and belief, Quantum recently began distributing in interstate commerce a false side-by-side comparative advertisement which purports to compare Quantum's "Hollywood Movie Money" program with TPG's e-MOVIE CASH$^{TM}$ program.  Quantum has distributed its false comparative claims without the authorization or consent of TPG.  A copy of Quantum's false comparative advertisement is attached as Exhibit D.

62.    Quantum's false comparative advertisement falsely compares Quantum's entire "Hollywood Movie Money" program with a subset of TPG's MOVIE CASH® program.

63.    Quantum's false comparative advertisement falsely labels Quantum as the "Superior Theater Network."

64.    Quantum's false comparative advertisement also falsely states that TPG's e-MOVIE CASH$^{TM}$ program includes "200 Participating Movie Theater Companies," "17,981 Screens" and "49% Coverage."  Each of these numbers is materially incorrect.

65.    Additionally, on information and belief, Quantum's false comparative advertisement falsely states that Quantum's "Hollywood Movie Money" program includes "600 Participating Movie Theater Companies," "36,049 Screens" and "98.5% Coverage."  On information and belief, each of these numbers is materially incorrect.

15

66.     Finally, Quantum's false comparative advertisement includes depictions of two maps, one which purports to show the theatre coverage available to customers of the "Hollywood Movie Money" program, and another which purports to show the theatre coverage available to customers of TPG's e-MOVIE CASH$^{TM}$ program.  The representations on the two maps are false and misleading on their face.

67.     On information and belief, Quantum distributed its false comparative advertisement without any substantiation of the comparative claims contained therein.

68.     On information and belief, TPG's incentive awards program services and Quantum's incentive awards program services are competitive services sold in the same channels of trade to similar customers.

69.     On information and belief, the claims made by Quantum in its false comparative advertisement are expressly and impliedly false because the theatre coverage available to customers of TPG's e-MOVIE CASH$^{TM}$ program is far greater than represented in the false comparative advertisement.

70.     On information and belief, the claims made by Quantum in its false comparative advertisement are expressly and impliedly false because the services being compared are not comparable.

71.     On information and belief, the claims made by Quantum in its false comparative advertisement are expressly and impliedly false because the theatre coverage available to customers of Quantum's "Hollywood Movie Money" program is far less than represented in the false comparative advertisement.

16

72.    Further, on information and belief, the claims made by Quantum in its false comparative advertisement are expressly and impliedly false because even if Quantum's theater coverage were "36,049 Screens," as falsely stated by Quantum, such number is not 98.5% of the available screen coverage in the United States.

73.    On information and belief, customers will decide to purchase Quantum's "Hollywood Movie Money" program because of the false and misleading statements Quantum is making in its false comparative advertisement.

74.    In addition to the "Movie Money" program, Quantum offers a variety of other incentive awards programs to its customers.  For example, Quantum has adopted and is using the following designations in interstate commerce for some of its programs: "Music Money," "Gas Money," "DVD Money," and "Entertainment Money."  On information and belief, Quantum has intentionally and maliciously adopted a family of marks for its incentive awards programs featuring redeemable certificates, which end with the word "Money," so as to misappropriate and copy TPG's CASH Family of Service Marks.

75.    Quantum previously used the designation "You've Got" in connection with and as a prefix to its marks, but now has dropped the "You've Got" phrase so as to cause customer confusion with TPG's CASH Family of Service Marks.  For example, Quantum previously used the designation "You've Got DVD Money," for its DVD incentive awards program, but now, on information and belief, uses the designation "DVD Money" without "You've Got" so as to appear confusingly similar to TPG's DVD CASH program.

76.    Quantum has used and is using in interstate commerce the designation "Music Money" for one of its incentive awards programs, and, on information and belief, has adopted this

17

designation deliberately to cause confusion with TPG's MUSIC CASH® service mark.

77.    Quantum has used and is using in interstate commerce the designation "Gas Money" for one of its incentive awards programs, and, on information and belief, has adopted this designation deliberately to cause confusion with TPG's GAS CASH® service mark.  A side by side comparison of Quantum's "Gas Money" card (left) and TPG's GAS CASH® card (right) demonstrates the confusing similarity:

          

(Quantum Loyalty Systems)                    (TPG Rewards)

78.    Quantum has used and is using in interstate commerce the designation "DVD Money" for one of its incentive awards programs, and, on information and belief, has adopted this designation deliberately to cause confusion with TPG's DVD CASH® service mark.

79.    Quantum has used and is using in interstate commerce the designation "Entertainment Money" for one of its incentive awards programs, and, on information and belief, has adopted this designation deliberately to cause confusion with TPG's ENTERTAINMENT CASH$^{TM}$ service mark.  Quantum even has copied TPG's use of a star illustration in connection with its ENTERTAINMENT CASH$^{TM}$ service mark.  A side by side comparison of Quantum's "Entertainment Money" designation (left) and TPG's ENTERTAINMENT CASH$^{TM}$ service mark

18

(right) demonstrates the confusingly similarity:

    

      (Quantum Loyalty Systems)               (TPG Rewards)

80.    Quantum's use of counterfeit, copy or colorable imitations of TPG's MOVIE CASH®, MUSIC CASH®, GAS CASH®, DVD CASH™, and ENTERTAINMENT CASH™ service marks was and is without TPG's authorization or consent.

81.    The offer for sale and sale by Quantum of incentive awards programs using colorable imitations of TPG's registered service marks MOVIE CASH®, MUSIC CASH® and GAS CASH®, and TPG's distinctive common law service marks DVD CASH™ and ENTERTAINMENT CASH™ is likely to cause confusion or mistake or deception of purchasers as to the source or origin of Quantum's services.

82.    Because current and future purchasers are likely to purchase Quantum's unauthorized services bearing colorable imitations of TPG's distinctive and famous service marks believing they are genuine services of TPG, TPG has suffered and will continue to suffer a loss in sales, to its substantial detriment.

83.    TPG has no control over the quality of the services provided, sold and offered for sale by Quantum.  By providing, selling and offering for sale unauthorized services, Quantum is attempting to subvert the right of TPG to control the quality of the services bearing its distinctive and famous service marks.  The confusion as to source engendered by Quantum leaves TPG's

valuable goodwill and reputation in its distinctive and famous service marks at the mercy of Quantum.

84.    The continued provision, sale and offer for sale of the unauthorized services by Quantum have injured and will continue to injure the business reputation of TPG, to its substantial detriment.

85.    On information and belief, the infringement by Quantum has been willful and deliberate, designed specifically to trade upon the enormous goodwill associated with TPG's distinctive and famous service marks in the United States and to capitalize on TPG's initiative.

86.    On information and belief, as a result of Quantum's false and misleading claims in its advertising and its service mark infringement, customers interested in incentive awards programs have been diverted from TPG to Quantum.  TPG has suffered and will continue to suffer from loss of customers.  These injuries are irreparable.

87.    Quantum's willful and intentional false and misleading claims and its service mark infringement have damaged TPG.

88.    Quantum's false advertising, service mark infringement and unfair competition will continue unless enjoined by this Court.

89.    TPG informed Quantum that Quantum's advertising claims are false, but Quantum refused to withdraw its false comparative advertisement prior to the filing of the Complaint, and continued its acts willfully.

## FIRST COUNT

### False Comparative Advertising Under Section 43(a) of the Lanham Act

90.    TPG repeats the allegations set forth in paragraphs 1-89 above as if fully set forth

herein.

91.    This cause of action for false advertising arises under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

92.    The representations made by Quantum in its advertising in interstate commerce, as set forth above, falsely and misleadingly describe the nature, characteristics, effectiveness, and other qualities of TPG's incentive awards promotional program.

93.    Quantum has expressly or impliedly stated in its advertising that 200 movie theatre companies participate in the e-MOVIE CASH$^{TM}$ program, and that the e-MOVIE CASH$^{TM}$ program has 17,981 screens and 40% coverage.  These statements are material, false and will induce customers to purchase Quantum's services instead of TPG's.

94.    Quantum's false comparative advertisement includes depictions of two maps which expressly mischaracterize and falsely compare the coverage of the "Hollywood Movie Money" program, and the coverage available to customers of TPG's e-MOVIE CASH$^{TM}$ program. These statements are material, false and will induce customers to purchase Quantum's services instead of TPG's.

95.    Quantum has expressly or impliedly stated in its advertising that its "Hollywood Movie Money" program is comparable to TPG's e-MOVIE CASH$^{TM}$ program when it is not.  These statements are material, false and will induce customers to purchase Quantum's services instead of TPG's.

96.    Quantum's false advertising has a tendency to deceive a substantial segment of its intended audience into mistakenly believing that Quantum's "Hollywood Movie Money" program possesses qualities which it lacks.  On information and belief, customers have been and will continue

to be induced thereby to purchase Quantum's "Hollywood Movie Money" program.

97.    As a result of defendant's false and misleading promotion and advertising, TPG has been and is likely to continue to be injured by diversion of customers from TPG to Quantum and by the lessening of the goodwill TPG's services enjoy with the buying public.  TPG has no adequate remedy at law.

## SECOND COUNT

### False Advertising Under Section 43(a) of the Lanham Act

98.    TPG repeats the allegations set forth in paragraphs 1-97 above as if fully set forth herein.

99.    This cause of action for false advertising arises under  §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

100.    The representations made by defendant in its advertising in interstate commerce, as set forth above, falsely and misleadingly describe the nature, characteristics, effectiveness, and other qualities of Quantum's "Hollywood Movie Money" program.

101.    Quantum has expressly or impliedly stated in its advertising that 600 movie theatre companies participate in the "Hollywood Movie Money" program, and that the "Hollywood Movie Money" program has 36,049 screens and 98.5% coverage.  On information and belief, these statements are material, false and will induce customers to purchase Quantum's services.

102.    Defendant's false advertising has a tendency to deceive a substantial segment of its intended audience into mistakenly believing that Quantum's "Hollywood Movie Money" program possesses qualities which it lacks.  On information and belief, customers have been and will continue

to be induced thereby to purchase Quantum's services.

103.    As a result of Quantum's false and misleading promotion and advertising, TPG has been and is likely to continue to be injured by diversion of customers from TPG to Quantum and by the lessening of the goodwill TPG's services enjoy with the buying public.  TPG has no adequate remedy at law.

## THIRD COUNT

### Infringement of a Federally Registered Service Mark (MOVIE CASH)

104.    TPG repeats the allegations set forth in paragraphs 1-103 above as if fully set forth herein.

105.    This cause of action for service mark infringement arises under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and is for infringement of a service mark registered by TPG in the United States Patent and Trademark Office as U.S. Registration No. 2,631,349.

106.    The unauthorized services provided, sold and/or offered for sale by Quantum bearing TPG's federally registered service mark MOVIE CASH or colorable variations thereof are likely to cause confusion, mistake or deception in that actual and potential customers are likely to believe that Quantum's services are provided by, sponsored by, approved by, licensed by, affiliated with, or emanate from TPG, and Quantum's acts constitute service mark infringement.

107.    Quantum will continue its infringing acts unless enjoined by this Court.  TPG has no adequate remedy at law.

## FOURTH COUNT

### Infringement of a Federally Registered Service mark (MUSIC CASH)

108.    TPG repeats the allegations set forth in paragraphs 1-107 above as if fully set forth herein.

109.    This cause of action for service mark infringement arises under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and is for infringement of a service mark registered by TPG in the United States Patent and Trademark Office as U.S. Registration No. 2,170,041.

110.    The unauthorized services provided, sold and/or offered for sale by Quantum bearing TPG's federally registered service mark MUSIC CASH or colorable variations thereof are likely to cause confusion, mistake or deception in that actual and potential customers are likely to believe that Quantum's services are provided by, sponsored by, approved by, licensed by, affiliated with, or emanate from TPG, and Quantum's acts constitute service mark infringement.

111.    Quantum will continue its infringing acts unless enjoined by this Court.  TPG has no adequate remedy at law.

## FIFTH COUNT

### Infringement of a Federally Registered Service mark (GAS CASH)

112.    TPG repeats the allegations set forth in paragraphs 1-111 above as if fully set forth herein.

113.    This cause of action for service mark infringement arises under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and is for infringement of a service mark registered by TPG in the

United States Patent and Trademark Office as U.S. Registration No. 2,582,293.

114.    The unauthorized services provided, sold and/or offered for sale by Quantum bearing TPG's federally registered service mark GAS CASH or colorable variations thereof are likely to cause confusion, mistake or deception in that actual and potential customers are likely to believe that Quantum's services are provided by, sponsored by, approved by, licensed by, affiliated with, or emanate from TPG, and Quantum's acts constitute service mark infringement.

115.    Quantum will continue its infringing acts unless enjoined by this Court.  TPG has no adequate remedy at law.

## SIXTH COUNT

### False Designation of Origin Under Section 43(a) of the Lanham Act

116.    TPG repeats the allegations set forth in paragraphs 1-115 above as if fully set forth herein.

117.    This cause of action, arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is for false designation of origin.

118.    Quantum, by the aforementioned acts of infringing TPG's CASH Family of Service Marks, has used in commerce a false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Quantum with TPG, or as to the origin, sponsorship, or approval of Quantum's services by TPG.

119.    Quantum will continue its infringing acts unless enjoined by this Court.  TPG has no adequate remedy at law.

## SEVENTH COUNT

### Injury To Business Reputation Under New York General Business Law

120.    TPG repeats the allegations set forth in paragraphs 1-119 above as if fully set forth herein.

121.    This cause of action arises under Section 360-l of the General Business Law of the State of New York.

122.    Quantum's acts of false advertising and infringing TPG's CASH Family of Service Marks are likely to injure the business reputation of TPG as customers who are dissatisfied with the quality of Quantum's unauthorized services will attribute their dissatisfaction to TPG.

123.    Quantum will continue to impair TPG's rights unless enjoined by this Court.  TPG has no adequate remedy at law.

## EIGHTH COUNT

### False Advertising Under New York General Business Law

124.    TPG repeats the allegations set forth in paragraphs 1-123 above as if fully set forth herein.

125.    This cause of action is for false advertising and arises under the statutory law of the State of New York (Section 350 of New York General Business Law).

126.    The representations made by defendant in its advertising in the State of New York, as set forth above, are false and misleading in a material respect, and will induce customers to purchase Quantum's services.

26

127.    On information and belief, customers have relied on the false and misleading representations made in Quantum's advertising to purchase Quantum's services.

128.    TPG has been, is being and will continue to be, irreparably damaged by such acts and damage will continue unless the acts are enjoined by this Court.  TPG has no adequate remedy at law.

## NINTH COUNT

### Deceptive Practices Under New York General Business Law

129.    TPG repeats the allegations set forth in paragraphs 1-128 above as if fully set forth herein.

130.    This cause of action is for deceptive practices and arises under the statutory law of the State of New York (Section 349 of New York General Business Law).

131.    The representations made by defendant in its advertising in the State of New York, as set forth above, are deceptive in a material respect, and will induce customers to purchase Quantum's services.  Quantum's service mark infringement, as set forth above, comprises deceptive acts in the conduct of Quantum's business.

132.    TPG has been, is being and will continue to be, irreparably damaged by such acts and damage will continue unless the acts are enjoined by this Court.  TPG has no adequate remedy at law.

## TENTH COUNT

### New York Common Law Service Mark Infringement (MOVIE CASH)

133.    TPG repeats the allegations set forth in paragraphs 1-132 above as if fully set forth

herein.

134.    This cause of action arises under New York common law.

135.    Quantum, by its acts, has unfairly competed with TPG and has infringed TPG's common law rights in the mark MOVIE CASH in violation of the common law of the State of New York.

136.    Plaintiff has been and is being damaged by such acts, and damage will continue unless defendants' acts are enjoined by this Court. Plaintiff has no adequate remedy at law.

## ELEVENTH COUNT

### New York Common Law Service Mark Infringement (MUSIC CASH)

137.    TPG repeats the allegations set forth in paragraphs 1-136 above as if fully set forth herein.

138.    This cause of action arises under New York common law.

139.    Quantum, by its acts, has unfairly competed with TPG and has infringed TPG's common law rights in the mark MUSIC CASH in violation of the common law of the State of New York.

140.    Plaintiff has been and is being damaged by such acts, and damage will continue unless defendants' acts are enjoined by this Court. Plaintiff has no adequate remedy at law.

## TWELFTH COUNT

### New York Common Law Service Mark Infringement (GAS CASH)

141.    TPG repeats the allegations set forth in paragraphs 1-140 above as if fully set forth

herein.

142.    This cause of action arises under New York common law.

143.    Quantum, by its acts, has unfairly competed with TPG and has infringed TPG's common law rights in the mark GAS CASH in violation of the common law of the State of New York.

144.    Plaintiff has been and is being damaged by such acts, and damage will continue unless defendants' acts are enjoined by this Court.  Plaintiff has no adequate remedy at law.


## THIRTEENTH COUNT

### New York Common Law Service Mark Infringement (DVD CASH)

145.    TPG repeats the allegations set forth in paragraphs 1-144 above as if fully set forth herein.

146.    This cause of action arises under New York common law.

147.    Quantum, by its acts, has unfairly competed with TPG and has infringed TPG's common law rights in the mark DVD CASH in violation of the common law of the State of New York.

148.    Plaintiff has been and is being damaged by such acts, and damage will continue unless defendants' acts are enjoined by this Court.  Plaintiff has no adequate remedy at law.


## FOURTEENTH COUNT

### New York Common Law Service Mark Infringement (ENTERTAINMENT CASH)

149.    TPG repeats the allegations set forth in paragraphs 1-148 above as if fully set forth

29

herein.

150.    This cause of action arises under New York common law.

151.    Quantum, by its acts, has unfairly competed with TPG and has infringed TPG's common law rights in the mark ENTERTAINMENT CASH in violation of the common law of the State of New York.

152.    Plaintiff has been and is being damaged by such acts, and damage will continue unless defendants' acts are enjoined by this Court.  Plaintiff has no adequate remedy at law.

**FIFTEENTH COUNT**

**New York Common Law Unfair Competition**

153.    TPG repeats the allegations set forth in paragraphs 1-152 above as if fully set forth herein.

154.    This cause of action is for unfair competition and arises under the common law of the State of New York.

155.    On information and belief, Quantum has created a likelihood of injury to TPG's business reputation by promoting and offering for sale Quantum's services with false advertising claims and by infringing TPG's CASH Family of Trademarks.

156.    On information and belief, Quantum's conduct is specifically designed to capitalize on the initiative and goodwill of TPG.

157.    TPG has been, is being and will continue to be irreparably damaged by such acts and damage will continue unless the acts are enjoined by this Court.  TPG has no adequate remedy at law.

30

**WHEREFORE**, plaintiff TPG Rewards, Inc. demands judgment:

(a)     Preliminarily and permanently enjoining Quantum, its agents, servants, employees and attorneys and all those acting in concert or participation therewith who receive notice of such injunction:

1.     From using any advertising, promotional material, packaging or the like which contains an express or implied claim that defendant's "Hollywood Movie Money" program has more coverage than any of TPG's MOVIE CASH® programs, including without limitation TPG's e-MOVIE CASH™ program;

2.     From copying, distributing or disseminating the information contained in the false comparative advertisement attached as Exhibit D to the Complaint, or any other advertisement or marketing or promotional material containing similar claims;

3.     From using any advertising, promotional material, packaging or the like which falsely compares defendant's "Hollywood Movie Money" program to any of TPG's MOVIE CASH® programs, including without limitation TPG's e-MOVIE CASH™ program;

4.     From using any advertising, promotional material, packaging or the like which misrepresents the coverage of defendant's "Hollywood Movie Money" program or any of TPG's MOVIE CASH® programs, including without limitation TPG's e-MOVIE CASH™ program;

31

5.    From using any advertising, promotional material, packaging or the like which states the number of movie theatres, movie theatre companies, or movie theatre screens which participate in any of TPG's MOVIE CASH® programs, including without limitation the e-MOVIE CASH™ program;

6.    From soliciting, accepting or creating any incentive awards program for a customer which defendant has solicited with the false advertising enjoined herein or any other advertising containing similar false comparative claims;

7.    From distributing any advertising, marketing or promotional material comparing any of Quantum's incentive awards programs to any incentive awards programs of TPG for a period of six months to allow the effects of defendant's false advertising to dissipate;

8.    From advertising, promoting, providing, offering for sale and selling incentive awards program services under TPG's federally registered service marks and common law service marks MOVIE CASH, DVD CASH, MUSIC CASH, GAS CASH, ENTERTAINMENT CASH or any colorable variations thereof or any confusingly similar mark;

9.    From advertising, promoting, providing, offering for sale and selling incentive awards program services under any of TPG's Family of Service Marks or any colorable variations thereof or any confusingly similar mark or any mark which substitutes the word MONEY for the word CASH as used by TPG;

10.    From representing that Quantum's services are affiliated with, related to, or sponsored by TPG or suggesting any connection with TPG;

11.    From using any signage, advertising, promotional material, packaging or the like which contains an express or implied claim that Quantum's incentive awards program services are affiliated with or sponsored by TPG;

12.    From unfairly competing with TPG; and

13.    From committing any acts which are likely to injure TPG's business reputation.

(b)    Requiring defendant to issue corrective advertising informing all customers to whom it distributed its false comparative advertising that its prior statements were false and that any customers who purchased an incentive awards program from Quantum as a result of such solicitation may cancel such programs and receive a full refund of any movies paid to Quantum;

(c)    Requiring that all copies of Quantum advertisements containing false and misleading claims, be delivered up to TPG for destruction, pursuant to 15 U.S.C. § 1118;

(d)    Requiring that all merchandise, signage, and the like bearing TPG's federally registered service marks and common law service marks or colorable variations thereof, and all advertising, packaging and labeling therefore, within the possession, custody or control of Quantum, be delivered up to TPG for destruction, pursuant to 15 U.S.C. § 1118;

(e)    Requiring defendant to pay its profits to TPG, any damages sustained by TPG as a result of defendant's acts, and TPG's costs of this action, pursuant to 15 U.S.C. § 1117(a) and/or New York General Business Law §§ 349 and 350, or any other damages recoverable under any other

statute alleged in this First Amended Complaint;

(f)    Requiring defendant to pay TPG three times the amount of TPG's actual damages due to the circumstances of this case, pursuant to 15 U.S.C. § 1117(b) and/or New York General Business Law §§ 349 and 350 and/or under any other statute alleged in this First Amended Complaint;

(g)    Awarding TPG its reasonable attorneys' fees because of the exceptional nature of this case, pursuant to 15 U.S.C. § 1117(a) and/or New York General Business Law §§ 349 and 350 and/or under any other statute alleged in this First Amended Complaint;

(h)    Awarding punitive damages to TPG in accordance with New York law; and

(i)    Granting such other and further relief as this Court deems just and proper.

TPG REWARDS, INC.

Dated: August 21, 2008                By:_____
                                            Robert T. Maldonado (RM 7873)
                                            Norman H. Zivin (NZ 6053)
                                            Tonia A. Sayour (TS 7208)
                                            COOPER & DUNHAM LLP
                                            1185 Avenue of the Americas
                                            New York, New York, 10036
                                            Tel.  (212) 278-0400
                                            Fax. (212) 391-0525
                                            E-mail: RMaldonado@cooperdunham.com
                                            Attorneys for TPG Rewards, Inc.

# Exhibit A

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

Reg. No. 2,631,349

## United States Patent and Trademark Office

Registered Oct. 8, 2002

### SERVICE MARK
### PRINCIPAL REGISTER

## MOVIE CASH

INTERPUBLIC GROUP OF COMPANIES, INC., THE (DELAWARE CORPORATION)
1271 AVENUE OF THE AMERICAS
44TH FLOOR
NEW YORK, NY 10020

FOR: PROMOTING THE GOODS AND SERVICES OF OTHERS THROUGH THE ADMINISTRATION OF CONSUMER INCENTIVE AWARDS PROGRAMS FEATURING REDEEMABLE CERTIFICATES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 2-28-1994; IN COMMERCE 2-28-1994.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MOVIE", APART FROM THE MARK AS SHOWN.

SER. NO. 76-334,342, FILED 11-6-2001.

RONALD MCMORROW, EXAMINING ATTORNEY

# Exhibit B

Int. Cl.: 35

Prior U.S. Cls.: 100, 101, and 102

Reg. No. 2,170,041

## United States Patent and Trademark Office

Registered June 30, 1998

## SERVICE MARK
### PRINCIPAL REGISTER

## MUSIC CASH

BOZELL WORLDWIDE, INC. (DELAWARE CORPORATION)
40 W. 23RD STREET
NEW YORK, NY 10010

FOR: PROMOTING THE GOODS AND SERVICES OF OTHERS THROUGH THE ADMINISTRATION OF CONSUMER INCENTIVE AWARDS PROGRAMS FEATURING REDEEMABLE CERTIFICATES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 3-0-1996; IN COMMERCE 3-0-1996.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC", APART FROM THE MARK AS SHOWN.

SN 75-086,947, FILED 4-10-1996.

MONTIA O. GIVENS, EXAMINING ATTORNEY

Exhibit C

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

Reg. No. 2,582,293

United States Patent and Trademark Office

Registered June 18, 2002

## SERVICE MARK
### PRINCIPAL REGISTER

## GAS CASH

INTERPUBLIC GROUP OF COMPANIES, INC., THE (DELAWARE CORPORATION)
1271 AVENUE OF THE AMERICAS, 44TH FLOOR
NEW YORK, NY 10020

FOR: PROMOTING THE GOODS AND SERVICES OF OTHERS THROUGH THE ADMINISTRATION OF CONSUMER INCENTIVE AWARDS PROGRAMS FEATURING REDEEMABLE CERTIFICATES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 9-30-2000; IN COMMERCE 9-30-2000.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "GAS", APART FROM THE MARK AS SHOWN.

SER. NO. 76-339,706, FILED 11-19-2001.

RONALD MCMORROW, EXAMINING ATTORNEY

# Exhibit D

# Superior Theater Network





**600** **Participating Movie Theater Companies**
**36,049** **Screens** **98.5%** **Coverage**

**200** **Participating Movie Theater Companies**
**17,981** **Screens** **49%** **Coverage**

**QuantumLoyalty.com**

QUANTUM LOYALTY SYSTEMS

**North America ★ South America**
**Europe ★ Australia**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and complete copy of the foregoing FIRST

AMENDED COMPLAINT was served by hand this 21st day of August, 2008 on counsel for

Defendant at the following address:

> Michael E. Petrella, Esq.
> O'Shea Partners LLP
> 90 Park Avenue, 20th Floor
> New York, New York  10016


       /s/ Tonia A. Sayour